STETSON ET AL. *vs.* LE BLANC ET AL.

STETSON ET AL
*vs.*
LE BLANC
ET AL.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

The discontinuance of a suit is not conclusive evidence of a want of a cause of action, and that a sequestration was wrongfully sued out, particularly as relates to the surety in the bond. In a suit on the bond after a discontinuance, evidence may be given, that some cause of action existed at least in mitigation of damages.

Grounds of suspicion, merely, and those extremely *slight, do* not authorise a resort to so severe a mode of proceeding as a sequestration, nor ought they to have much influence in varying the standard by which damages should be awarded.

A party against whose property a writ of sequestration is wrongfully sued out, ought to be placed as nearly as possible, in the situation in which he would have been had the writ not issued. If the party suing out the writ, fail to show not merely a real cause of action, but a ground of suspicion, which would justify a man in the sober pursuit of his *rights,* uninfluenced by momentary pique, to resort to a remedy intended only for extreme cases, he will subject himself to pay damages according to a liberal standard though not vindictive.

A verdict not followed by a judgment has no force for any purpose.

The plaintiffs claim damages to the amount of nine thousand dollars, on account of one of the defendants having wrongfully sued out a writ of sequestration against their property.

The plaintiffs aver that on the first day of December, 1329, Jules Le Blanc commenced a suit against them, alleging that they claimed and had taken possession of one hundred and eighty-nine thousand seven hundred and thirty staves, the property of Jules Le Blanc, as he pretended, and which he stated to be of the value of six thousand dollars. Jules Le Blanc prayed that the said staves which were in their possession, should be sequestered and held by

EASTERN DIS.
March, 1834.

STETSON ET AL
vs.
LE BLANC
ET AL.

the sheriff, which was accordingly done, and the same were immediately taken out of their possession, and have ever since been held by the sheriff.

At the time of issuing said sequestration, Le Blanc and Charles Lesseps executed their bond, by which they acknowledged themselves held and firmly bound in the sum of nine thousand dollars, conditioned " that if the said Jules Le Blanc should prosecute his said sequestration with effect, or should pay any such damages as said Stetson & Avery may sustain, in case this sequestration should have been wrongfully obtained; then the obligation to be null, or else to remain in full force and virtue."

They further state, that Le Blanc has not prosecuted said sequestration with effect; that on the 21st day of May, he discontinued his said suit; that said sequestration was " wrongfully obtained;" that said staves were their property, and never did belong to said Le Blanc.

The defendants admit the institution of the suit, and that sequestration was made of certain staves, as appears from the record of the case of *J. Le Blanc* vs. *Stetson & Avery*. They aver that no damage has been sustained by the plaintiffs, in manner and form as is in their petition set forth, and that the present defendants had reasonable grounds for the institution of said suit and said sequestration. They deny that said staves belonged or belongs to the plaintiffs. They added the general denial.

Before instituting the suit, Stetson & Avery offered to surrender the staves on being paid the amount of the bond, viz: nine thousand dollars, or to dispose of them as Le Blanc should direct.

After several continuances, the cause was tried, and a verdict found for the plaintiffs for two thousand dollars, which was set aside as for excessive damages. The trial by jury was then waived, and the case submitted to the court.

The record of the former suit was given in evidence. The petition in that suit averred that Le Blanc was the owner of two hundred and ninety-three thousand staves, deposited on

EASTERN DIS.
March, 1834.
STETSON ET AL
vs.
LE BLANC
ET AL.

the bank of the Mississippi, opposite to the city, on a lot of ground hired for that purpose; that in August, 1829, one hundred eighty-nine thousand seven hundred and thirty of said staves were taken away by persons unknown to the petitioner, and without authority, and piled up behind the powder magazine; that said staves are claimed by Stetson & Avery, but that they have no right or title to the possession or property of the same; that the petitioner apprehends they will be removed out of the jurisdiction of the court, and prays sequestration, which was granted on the usual bond.

Stetson & Avery filed an answer, and pleaded in reconvention; but Le Blanc discontinued the suit on the 21st May, 1830, the day for which it was fixed for trial.

*Mathews*, testified for the defendant, that in the month of May, he was employed by Le Blanc in taking staves across the river, to Bonny's lot; he saw a mulatto man named Joe, transporting two flatboats of pipe staves from the landing opposite the lot of Bonny, to the levée of Mr. Mossy, opposite the powder magazine. Witness inquired of said Joe the reason why he was transporting Mr. Le Blanc's staves, when he told witness that Mr. Le Blanc had taken a lot in the rear of the powder magazine, and that he was taking the staves there. Bonny's lot is from five to six hundred yards below the powder magazine. On a deficiency in Le Blanc's staves being discovered, witness mentioned this circumstance; it was three to four months after it happened. Witness made inquiry for Joe; he was said to be dead. Joe had been employed by Le Blanc to discharge several boat loads of staves for Mr. Le Blanc, on Bonny's lot, and also to purchase staves for him. He appeared to have charge of the staves in said lot. Witness informed Mr. Le Blanc of the circumstance, on his return from the north. On his cross examination, witness says he cannot swear positively that the boat load of staves removed by Joe, belonged to Le Blanc; he did not see them bought; he believes that no other boats loaded with staves, than those belonging to Mr. Le Blanc, lay opposite the lot of Mr. Bonny. He saw the

EASTERN DIS.
*March*, 1834.

STETSON ET AL
*vs.*

LE BLANC
ET AL.

staves laying on the levée, after being landed from said boats, and saw part of them carried into a lot in the rear of the magazine. Witness was principally employed at the stave yard hired by Mr. Le Blanc, belonging to Mr. Layton.

*Ashuret,* testified for the defendant, that he lives on the opposite side of the river, near Bonny's lot; that in 1829, the staves were piled so high that Bouny objected to it, lest they should be thrown down; that at this time, two flatboats, with staves, were laying along side of the levée; part were landed. Bonny objected to any more being landed, and the persons employed by Le Blanc desisted; the boat lay there several days. One morning, very early, witness observed a man transporting the flatboat with a full load of staves, and the other, two thirds full, up the river, and saw him taking said boats to the landing of Mossy; that the staves in said two boats were landed on the levée, and witness afterwards saw them carried, by persons employed for that purpose, into the lot in the rear of the powder magazine, and piled up there.

Judgment was rendered by the judge *a quo* in favor of the plaintiffs, for one thousand three hundred forty-nine dollars and fifty cents.

The defendants appealed.

The appellees denied error in the judgment of the inferior court, to the prejudice of the appellants, but averred that the sum adjudged in their favor should be increased to two thousand dollars.

BULLARD, J., delivered the opinion of the court.

The defendants are sued as principal and security in a sequestration bond given to the plaintiff in a former suit of the present defendant Le Blanc against the plaintiffs, in which a quantity of staves were sequestered as the property of Le Blanc, which he charged the present plaintiffs with having taken possession of, and which he claimed as his property. The staves remained sequestered about six months, and the suit was discontinued by the plaintiff. The District Court assessed the damages sustained by them at

Eastern Dis.
March, 1834.

STETSON ET AL.
vs.
LE BLANC
ET AL.

The discontinuance of a suit is not conclusive evidence of a want of action, and that a sequestration was wrongfully sued out, particularly as relates to the surety in the bond In a suit on the bond after a discontinuance, evidence may be given that some cause of action existed, at least in mitigation of damages.

one thousand three hundred and forty-nine dollars and fifty cents and the defendants appealed.

It is true as contended by the counsel of the appellant, that the discontinuance of the suit is not conclusive evidence of a want of cause of action, and that the sequestration was wrongfully sued out. This is particularly true as relates to the security. The fact that the plaintiffs had some cause of action may well be given in evidence, at least in mitigation of damages. *Martin's Rep.* 6 *N. S.* 338. 8 *N. S.* 481.

But we think, on a careful examination of the evidence, that the defendant has failed in proving that he had any cause of action against the present plaintiffs whatever. In his answer in this case he does not pretend to have had a real cause of action. He says, that he had reasonable grounds for instituting the suit, and he denies that the staves which he then claimed as his, were the property of the plaintiffs, but he does not pretend that any of them were his. In the former suit he set up title to the staves, and obtained the sequestration on the ground that they had been taken possession of by the plaintiffs, and that there was danger of their being removed beyond the jurisdiction of the court.

. With a view of showing probable grounds for resorting to a harsh remedy, by which the real owner was kept out of the use of his property for six months, he has proved by one of his witnesses, that about seven months before the sequestration was sued out, he the witness saw a mulatto man named Joe, who had been employed by Le Blanc to discharge staves from flatboats, transporting two boat loads from the landing opposite the lot of Mr. Bonny, where Le Blanc kept his staves, to the levée opposite the powder magazine, back of which the plaintiffs kept theirs. That the mulatto told him Mr. Le Blanc had taken a lot back of the powder magazine, and that he was taking the staves there. This witness was himself at that time in the employment of Le Blanc; but so little impression does this circumstance appear to have made on his mind, that he did not communicate the fact until several months afterwards. He saw the staves afterwards lying on the levee; that he has

made inquiries for Joe, and is informed that he is dead.
He does not even know that the boat loads of staves that Joe
was moving, belonged to the defendant. He saw a part of
the staves carried to the lot back of the powder magazine.
Another witness swears that two boat loads were taken from
Bouny's landing; were discharged opposite the magazine,
where the staves remained about ten days on the Levee, and
were finally taken back of the magazine. But he does not
pretend to know that Le Blanc owned the staves, nor does
he say that he notified Mr. Le Blanc of the fact.

The authorities cited by the defendant's counsel relate
principally to cases of malicious prosecution. And in such
cases it is enough to prove probable cause for instituting the
prosecution. Damages in cases of that kind are awarded
for wanton injury inflicted on the character and feelings of
the person unjustly subjected to prosecution, and it is the
policy of the law not to discourage prosecution in which the
public good is concerned, where there is probable cause
for proceeding. Grounds of suspicion merely and those
extremely slight do not, in our opinion, authorise a resort to
so severe a mode of proceeding as a sequestration, nor ought
they to have much influence in varying the standard by
which damages should be awarded. The plaintiffs were
deprived of the faculty of profiting by the fluctuations of the
market. Their property was becoming deteriorated by
decay; they were subject to the expense and trouble of
defending the suit, and the evidence shows a fall of price
in the mean time. But it is contended that the District
Court was bound to estimate the loss sustained by the plain-
tiffs according to the prices in France, because they had
alleged in their petition, that they intended to ship the
staves to France for sale. Nothing is said in the petition
about the market of France. It is true they allege that
they have sustained damage by the wrongful suing out of
the sequestration by being *prevented from shipping and selling*
their staves. They seem to have thought that they were
entitled to consequential damages. In our opinion the true
standard is the probable loss sustained here in consequence

Grounds of sus-
picion merely and
those extremely
slight, do not au-
thorise a resort to
so severe a mode
of proceeding as
sequestration, nor
ought they to have
much influence in
varying the stand-
ard by which da-
mages should be
awarded.

EASTERN DIS. of being deprived of the free disposal of their own property,
*March*, 1834. together with the other elements above mentioned. The

STETSON ET AL.
*vs.* plaintiffs ought to be placed as nearly as possible in the

LE BLANC
ET AL. situation they would have been if the sequestration had

A party against never issued. Having failed to show, not merely any real
whose property a
writ of sequestra- cause of action, but any grounds of suspicion which would
tion is wrongfully
sued out ought to justify a man in the sober pursuit of his rights, and not influ-
be placed as near-
ly as possible in enced by momentary pique, to resort to a remedy intended
the situation in
which he would only for extreme cases, the defendant has subjected himself
have been had the
writ not issued. to pay damages according to a liberal standard though not
If the party suing
out the writ fail to vindictive. We are not enabled to say from the evidence,
show not merely
no real cause of that the sum awarded by the District Court is excessive.
action, but no
ground of suspi-
cion which would The appellee in his answer, asks that the judgment may
justify a man in
the sober pursuit be reversed and higher damages awarded; and he refers us
of his rights, un-
influenced by mo- to a verdict on a former trial for two thousand dollars, not
mentary pique to
resort to a reme- as a standard at all binding on the court, but as the opinion
dy intended only
for extreme cases, of twelve men on the question of damages, although set
he will subject
himself to pay da- aside by the court as excessive. We cannot look at the
mages according
to a liberal stand- verdict for any purpose. If it is not a verdict followed by a
ard though not
vindictive. judgment it is nothing, for it cannot be considered as evi-
A verdict not
followed by a dence in the cause.
judgment has no
force for any pur-
pose.

It is therefore ordered, adjudged, and decreed by the
court, that the judgment of the District Court be affirmed
with costs.

*Slidell*, for plaintiffs and appellees.

*Carleton* and *Lockett*, for defendants and appellants.